IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARRELL THURSTON, Sr., <br> #N-50920, <br>     Plaintiff, <br> vs. <br> WEXFORD HEALTH SOURCES, INC., <br> DR. VIPIN SHAH, <br> DR. EVARISTO AGUINALDO, and <br> NURSE PRACTITIONER WILLIAMS, <br>     Defendants. | Case No. 17−cv–00832−MJR |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

This matter is now before the Court for consideration of the Second Amended Complaint filed by Plaintiff Darrell Thurston, Sr. (Doc. 23). Plaintiff is currently incarcerated at Stateville Correctional Center ("Stateville"). He brings this civil rights action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights at Stateville and Pinckneyville Correctional Center ("Pinckneyville").[1] *Id*.

In the Second Amended Complaint, Plaintiff claims that medical providers at both prisons provided him with inadequate medical treatment for his high blood pressure. (Doc. 23, pp. 1-8). He asserts an Eighth Amendment deliberate indifference to medical needs claim against Vipin Shah (Pinckneyville doctor), Evaristo Aguinaldo (Stateville doctor), Nurse

---

[1] Plaintiff originally filed this suit *pro se* in the United States District Court for the Northern District of Illinois on June 28, 2017. *Thurston v. Wexford Health Source, et al.*, No. 17-cv-04859 (N.D. Ill. 2017) (Doc. 1). The original Complaint focused on claims against Plaintiff's medical providers at Pinckneyville, a prison that is located in this District. Accordingly, on August 3, 2017, the Northern District of Illinois transferred the case to this District, where the Court recruited counsel to represent Plaintiff in this matter after screening and dismissing his Complaint (Doc. 1) and First Amended Complaint (Doc. 14). (Docs. 6-7, 13, 17).

1

Practitioner Williams (Stateville nurse), and Wexford Health Sources, Inc. ("Wexford") (private medical corporation). *Id*. Plaintiff seeks monetary damages against the defendants, as well as medical treatment.[2] (Doc. 23, pp. 7-8).

The Second Amended Complaint is now subject to preliminary review under 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. As part of the screening order, the Court will

---

[2] Plaintiff does not seek injunctive relief in his request for relief. However, he mentions a request for medical treatment in the statement of his claim, which the Court interprets as a request for injunctive relief at the close of the case. This request is presumably directed at the Stateville defendants who are currently denying him treatment. Should he seek more immediate relief, Plaintiff should file a motion for a temporary restraining order or preliminary injunction pursuant to Rule 65(a) or (b) of the Federal Rules of Civil Procedure against the Stateville defendants. Any request for injunctive relief against the Pinckneyville defendants is considered moot, given Plaintiff's transfer from that facility. Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Pinckneyville under the conditions described in the Second Amended Complaint would it be proper for the Court to consider injunctive relief against those defendants. *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

also consider whether any claims in the Second Amended Complaint are improperly joined in this action and are subject to severance. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

## **Second Amended Complaint**

Plaintiff suffers from hypertension. (Doc. 23, p. 1). In the Second Amended Complaint, Plaintiff claims that he has received inadequate medical care for the condition since 2013. (Doc. 23). Doctor Vipin Shah allegedly prescribed him the wrong medication at Pinckneyville, and Doctor Evaristo Aguinaldo and Nurse Practitioner Williams have continued to do so at Stateville. (Doc. 23, pp. 1-2). Plaintiff attributes this inadequate medical care, in part, to Wexford, the private medical corporation that staffs both prisons. (Doc. 23, pp. 7-8).

**1.      Pinckneyville**

Doctor Shah treated Plaintiff for high blood pressure during his incarceration at Pinckneyville between April or May 2013 and "early 2015" or the "summer of 2015."[3] (Doc. 23, pp. 1, 4). Doctor Shah prescribed Plaintiff Clonidine, a medication that is more commonly referred to as Catapres. *Id*. Rather than reducing his blood pressure, however, the medication increased it to dangerously high levels. *Id*. Plaintiff's systolic pressure increased from approximately 140 to 215, and his diastolic pressure increased from approximately 70 to 110. (Doc. 23, p. 4). Doctor Shah nevertheless continued to treat Plaintiff with the same medication for approximately 18 months. *Id*.

Another physician at the prison, named Doctor Smith, discontinued the medication in early 2015, after notifying Plaintiff that he was suffering from kidney problems caused by Clonidine. (Doc. 23, pp. 1, 4-5). The doctor did not make any other changes to Plaintiff's

---

[3] The Second Amended Complaint refers to both time periods. (Doc. 1, pp. 1, 4). It is therefore unclear when Plaintiff's treatment with Doctor Shah ended. *Id*.

3

treatment regimen. (Doc. 23, p. 5). Following the discontinuation of Clonidine, Plaintiff's blood pressure dropped to more stable levels. *Id*.

That summer, Plaintiff underwent kidney dialysis at a hospital located in Marion, Illinois. (Doc. 1, p. 5). He was then transferred from to Graham Correctional Center in Hillsboro, Illinois. *Id*. Medical providers at Graham informed Plaintiff that he was suffering from renal failure but placed him back on Clonidine. *Id*.

**2.     Stateville**

Plaintiff transferred to Stateville in October 2015. (Doc. 23, p. 5). There, Doctor Saleh Obaisi[4] continued to treat Plaintiff with Clonidine. (Doc. 23, p. 2). In addition, the doctor prescribed other blood pressure medications. (Doc. 23, p. 5). Plaintiff's blood pressure "skyrocket[ed]" as a result. (Doc. 23, pp. 2, 5).

At some point before January 2018, Doctor Aguinaldo and Nurse Practitioner Williams assumed responsibility for Plaintiff's care after Doctor Obaisi passed away. (Doc. 23, pp. 2, 5). They continued to treat him with Clonidine. (Doc. 2, pp. 2, 6). The medication failed to stabilize Plaintiff's blood pressure and also caused additional health problems. *Id*. Plaintiff required regular dialysis. *Id*. He lost the ability to urinate on his own. *Id*. Plaintiff developed facial numbness. (Doc. 2, pp. 2, 5-6). He was also diagnosed with congestive heart failure. *Id*.

Plaintiff now brings claims against Doctor Shah, Doctor Aguinaldo, and Nurse Practitioner Williams for responding to his serious medical condition with deliberate indifference, in violation of the Eighth Amendment. (Doc. 23, pp. 6-7). He also asserts a *Monell*

---

[4] Plaintiff refers to several individuals in the statement of claim who are not identified as defendants in the caption of the Second Amended Complaint or in the list of defendants. These individuals include Doctor Obaisi, Doctor Smith, and Doctor Feely, among others. (Doc. 23, pp. 1-8). When parties are not listed in the caption, this Court will not treat them as defendants. Any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

claim against Wexford for hiring incompetent medical staff and instituting unspecified policies that resulted in the denial of adequate medical care. *Id*.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's Second Amended Complaint into the following enumerated counts:

> **Count 1 -** Eighth Amendment deliberate indifference to medical needs claim pursuant to *Monell* against Defendant Wexford for hiring incompetent medical providers and instituting unspecified policies that resulted in the denial of adequate medical care for Plaintiff's high blood pressure at Pinckneyville and Stateville.
>
> **Count 2** - Eighth Amendment deliberate indifference to medical needs claim against Defendant Shah for denying Plaintiff adequate medical treatment for his high blood pressure at Pinckneyville from 2013 until 2015.
>
> **Count 3** - Eighth Amendment deliberate indifference to medical needs claim against Defendants Aguinaldo and Williams for denying Plaintiff adequate medical treatment for his high blood pressure at Stateville since sometime before January 2018.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designations do not constitute an opinion regarding the merits of these claims. **Any claims that are encompassed by the allegations in the Second Amended Complaint but not identified above are considered dismissed without prejudice for failure to meet the *Twombly* pleading standards.**

All of the claims in this case arise under the Eighth Amendment, which prohibits the cruel and unusual punishment of prisoners. U.S. CONST., amend. VIII. Prison officials violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical

needs. *Cesal v. Moats*, 851 F.3d 714 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*)). In order to state a claim for the denial of adequate medical care, Plaintiff must show that (1) he suffered from a sufficiently serious medical condition (an objective standard), and (2) state officials acted with deliberate indifference to his medical condition (a subjective standard). *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). The doctrine of *respondeat superior* is inapplicable under § 1983. To state a claim against the individual defendants, Plaintiff must demonstrate that each defendant was personally involved in the deprivation of a constitutional right. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

With regard to Count 1, Plaintiff cannot proceed with a claim against Wexford simply because the private medical corporation employed the medical providers who allegedly denied Plaintiff adequate medical treatment. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citing *Chavez*, 251 F.3d at 651). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981). Plaintiff seeks to do just that in the Second Amended Complaint, when he brings a claim against Wexford for hiring allegedly incompetent medical providers. (Doc. 23, pp. 6-7). Because the doctrine of *respondeat superior* is inapplicable to § 1983 claims, this theory of liability fails.

Although Wexford can be liable for deliberate indifference to an inmate's medical condition if the private medical corporation maintained a policy, custom, or practice that resulted in a violation of the inmate's rights, the allegations do not support a claim against Wexford here. *See Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (corporations that contract with prison and jail facilities to provide medical care are treated as municipalities for purposes of § 1983);

*Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000) ("municipality may be liable for harm to persons incarcerated under its authority 'if it maintains a policy that sanctions the maintenance of prison conditions that infringe upon the constitutional rights of prisoners.'"). The policy or practice "must be the 'direct cause' or 'moving force' behind the constitutional violation." *Minix*, 597 F.3d at 832. *See also Woodward v. Correctional Medical Service of Illinois, Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Plaintiff identifies no particular policy, custom, or practice that resulted in the deprivation of his constitutional rights, other than the one of employing incompetent medical providers that was already dismissed above. He instead relies on bald allegations and conclusory legal statements to support this claim against Wexford. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Absent any indication of what other policy or practice resulted in the denial of Plaintiff's medical care, Count 1 cannot proceed against Wexford at this time and shall be dismissed without prejudice.

Count 2 against Doctor Shah survives screening. The allegations suggest that this defendant knowingly engaged in an ineffective course of treatment when he prescribed Plaintiff Clonidine for 18 months, despite the fact that Plaintiff's blood pressure increased to dangerously high levels and caused permanent adverse health consequences. (Doc. 23). Doctor Shah was allegedly aware of the effect this medication had on Plaintiff but opted not to change his course of treatment or address his underlying condition. *See, e.g., Hotchkiss v. David*, 713 F. App'x 501, 502 (7th Cir. 2017) (reversing and remanding dismissal of claim against physician who resorted to ineffective course of treatment with pain medication for inmate who had uneven legs without addressing his underlying problem); *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010) (persisting in easy but ineffective course of treatment that exacerbates an injury or unnecessarily

prolongs pain supports claim of deliberate indifference); *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (citing *Kelly v. McGinnis*, 899 F.2d 612, 616 (7th Cir. 1990) (medical personnel cannot simply resort to an easier course of treatment that they know is ineffective). Count 2 is subject to further review against Doctor Shah. The Court takes no position at this time regarding the potential statute of limitations problem posed by this claim, given the inconsistent information provided about the timing of Plaintiff's treatment with this defendant in the Second Amended Complaint.

Count 3 shall be severed into a new case. *See* FED. R. CIV. P. 18-21. The Seventh Circuit Court of Appeals has emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George v. Smith*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b), (g)). Claims against different groups of defendants that do not arise from a single transaction or occurrence (or series of related transactions or occurrences) and also do not share a common question of law or fact may not be joined in the same suit. *See* FED. R. CIV. P. 20(a)(2).

The Court has broad discretion when deciding whether to sever claims under Federal Rules of Civil Procedure 18, 19, and 21 or to dismiss improperly joined defendants. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). However, the Seventh Circuit has repeatedly and emphatically warned district courts not to allow inmates "to flout the rules for joining claims and defendants, *see* FED. R. CIV. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017).

*See also Wheeler v. Talbot*, 695 F. App'x 151 (7th Cir. 2017) (district court should have severed unrelated and improperly joined claims or dismissed one of them).

The claim in Count 3 against Doctor Aguinaldo and Nurse Practitioner Williams is improperly joined with the claim in Count 2 against Doctor Shah. Count 2 arises from Doctor Shah's allegedly inadequate treatment of Plaintiff at Pinckneyville from April or May 2013 until "early 2015" or sometime that summer. (Doc. 23, pp. 1, 4-5). Count 3 arises from Doctor Aguinaldo and Nurse Practitioner Williams' allegedly inadequate treatment of Plaintiff beginning sometime before January 2018 to the present. (Doc. 23, pp. 1-2, 6-7). These claims arose during distinct time periods at different facilities and involved different groups of defendants. They cannot proceed together in the same action. Consistent with *George* and the Federal Rules of Civil Procedure, the Court shall sever Count 3 against Doctor Aguinaldo and Nurse Practitioner Williams into a separate action. The newly severed case shall receive a new case number, and Plaintiff shall be assessed another filing fee for the case. Count 3 will be separately screened pursuant to 28 U.S.C. § 1915A.

## Disposition

The Clerk is **DIRECTED** to substitute Defendant **WEXFORD HEALTH SOURCES, INC.** in place of Defendant **WEXFORD HEALTH CARE SOURCE** in CM/ECF.

**IT IS HEREBY ORDERED** that **COUNT 1** fails to state a claim upon which relief may be granted against Defendant **WEXFORD HEALTH SOURCES, INC.** and is therefore **DISMISSED** without prejudice.

**IT IS ORDERED** that **COUNT 3**, which is unrelated to **COUNT 2**, is **SEVERED** into a single new case against Defendants **DR. EVARISTO AGUINALDO** and **NURSE PRACTITIONER WILLIAMS**, which shall be captioned: **DARRELL THURSTON, SR.,**

**Plaintiff v. DR. EVARISTO AGUINALDO and NURSE PRACTITIONER WILLIAMS, Defendants.**

In the new case, the Clerk is **DIRECTED** to file the following documents:

(1) This Memorandum and Order;

(2) The Second Amended Complaint (Doc. 23);

(3) Plaintiff's Application for Leave to Proceed *in forma pauperis* (Doc. 3).

Because Plaintiff was granted leave to proceed *in forma pauperis* in this case, he shall be granted leave to proceed as a poor person in the newly-severed case as well. Plaintiff **will be responsible for an additional $350.00 filing fee** in the new case. Count 3, the only claim in the newly severed case, will be screened pursuant to 28 U.S.C. § 1915A after the new case number and judge assignment are made. No service shall be ordered on the defendant(s) in the newly-severed case until the § 1915A review is complete.

Plaintiff is **ADVISED** that this Court recruited counsel to represent him *in this case only*. (Doc. 17, p. 8). Attorney J. Timothy Eaton shall therefore continue to represent Plaintiff in this matter. Attorney Eaton's obligation does not extend to the newly-severed case. If Plaintiff would like to file a new Motion for Recruitment of Counsel in the newly-severed case, he may do so.

**IT IS FURTHER ORDERED** that the *only claim remaining in this action is COUNT 2 against Defendant DR. VIPIN SHAH*. This case shall now be captioned: **DARRELL THURSTON, SR., Plaintiff v. DR. VIPIN SHAH, Defendant.**

**IT IS ORDERED** that Defendants **DR. EVARISTO AGUINALDO** and **NURSE PRACTITIONER WILLIAMS** are **DISMISSED** with prejudice from *this* action, and

Defendant **WEXFORD HEALTH SOURCES, INC.** is **DISMISSED** without prejudice from *this* action.

**IT IS ORDERED** that **COUNT 2**, the only claim now at issue in this case, survives screening and shall proceed for further review against Defendant **DR. VIPIN SHAH**.

With respect to **COUNT 2**, the Clerk of Court shall prepare for Defendant **DR. VIPIN SHAH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint (Doc. 23) and this Memorandum and Order to the Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant and the Court will require Defendant to pay the full costs of formal service to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to United States Magistrate Judge **Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 30, 2018**

s/ Michael J. Reagan
**District Judge**
**United States District Court**
